IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:25-CV-00085-M

| | | |
|---|---|---|
| ROOSEVELT SESSOMS BOND,<br><br>Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>*Acting Commissioner of Social Security*,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

This matter comes before the court on the Memorandum and Recommendation ("M&R") issued by United States Magistrate Judge Robert T. Numbers. DE 21. Judge Numbers recommends that this court deny Plaintiff relief, grant Defendant relief, and affirm the final decision of the Commissioner. After de novo review of the contested findings in this case, the court finds that the ALJ made none of the errors reported by Plaintiff, overrules Plaintiff's objections, adopts the thorough rationale of the M&R, and concurs in the M&R's recommended rulings.

## I. Standards of Review

A magistrate judge's recommendation carries no presumptive weight. When reviewing a recommendation, this court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). To accept the parts of the recommendation to which Plaintiff did not object, the court need only check for clear error. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Upon careful review of the record, "the court may accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A reviewing court must uphold a Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). Evidence is "substantial" if "a reasonable mind might accept [it] as adequate to support a conclusion," and "consists of more than a mere scintilla . . . but may be less than a preponderance." *Pearson v. Calvin*, 810 F.3d 204, 207 (4th Cir. 2015). Though this court does not "reflexively rubber-stamp an ALJ's findings," it also does not "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment" for the ALJ's. *Arakas*, 983 F.3d at 95. Rather, the court's review ensures that the ALJ "'buil[t] an accurate and logical bridge' from the evidence to their conclusions." *Hultz v. Bisignano*, 162 F.4th 111, 120 (4th Cir. 2025) (quoting *Arakas*, 983 F.3d at 94).

Under § 636(b)(1), the claimant's objections to the M&R must be "specific and particularized" to facilitate district court review. *United States v. Midgette,* 478 F.3d 616, 621 (4th Cir. 2007). General and conclusory objections that do not direct the court to a specific error in the M&R fall short of this standard. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## II. Analysis

Plaintiff challenges the Commissioner's decision affirming Administrative Law Judge ("ALJ") Teresa Hoskins-Hart's denial of social security income. He asserts that he is illiterate and that the ALJ miscalculated his language abilities, thereby failing to carry her Step Five burden of showing a substantial number of jobs Plaintiff can perform. DE 22 at 1. The matter was referred to Magistrate Judge Numbers for a recommendation pursuant to 28 U.S.C. § 636(b)(1) and Federal

Rule of Civil Procedure 72(b). Judge Numbers concluded that the ALJ reached the "appropriate determination" with respect to Plaintiff's residual functional capacity (RFC) and the Step Five finding, and that Plaintiff "failed to meet his burden of establishing that he is illiterate." M&R, DE 21 at 1. Judge Numbers recommends that this court deny Plaintiff relief, grant Defendant relief, and affirm the Commissioner's decision. *Id.*

Plaintiff filed timely objections to the M&R on June 10, 2026. DE 22. Defendant has not responded to Plaintiff's objections, and the deadline to do so passed on June 24, 2026.

Plaintiff does not object to the following sections in the M&R: "Background" (Part I), "Standard of Review of the Commissioner's Final Decision" (Part II.A), "Standard for Evaluating Disability" (Part II.B), "Pain" (Part II.C.1), and "Cognitive and Intellectual Functioning" (Part II.C.2). The court finds no clear error with those sections on the face of the record and therefore adopts and incorporates by reference those portions of the M&R as if fully set forth herein.

Plaintiff primarily argues that there is "no substantial evidence in this record that any of the occupations cited by the vocational expert and the Agency are amendable to [his] limited language development." DE 22 at 3. Plaintiff particularly objects to the finding that he is not illiterate. *Id.* at 2, Tr. at 35. He submits that his current writing abilities and educational history show otherwise. DE 22 at 2. Plaintiff also objects to the M&R "improperly shift[ing] the Step 5 burden" onto him, by "questioning his Martin County Community College testing results and the other evidence [he] submitted of his limited language development ability." *Id.* at 3.

The court reviews contested findings in an M&R de novo, and must "uphold a Social Security disability determination if (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas*, 983 F.3d at 94. Review is deferential, and limited to whether the ALJ "'buil[t] an accurate and logical bridge' from the

evidence to their conclusion." *Id.* at 95 (citations omitted); *see also Hunter v. Sullivan*, 993 F.3d 31, 34 (4th Cir. 1992) ("It is not [the reviewing court's] place either to weigh the evidence or to substitute our judgment for that of the Secretary if that decision was supported by substantial evidence."); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997) (explaining that review focuses on whether the ALJ analyzed the relevant evidence and sufficiently explained her findings and rationale in crediting that evidence).

**A. Plaintiff's Illiteracy Arguments**

The court begins by finding that the record shows Plaintiff is not "illiterate" as defined by the Regulations. Tr. at 35. A claimant's education level is one of the vocational factors considered at Step Five of the disability evaluation process. *See* 20 C.F.R. § 416.964. The Regulations define four such levels: illiteracy, marginal education, limited education, and high school education and above. *Id.* at (b)(1)–(4). Illiteracy means the "inability to read or write." *Id.* at (b)(1). An illiterate claimant "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.* Generally, one who is illiterate has little or no formal schooling. *Id.*

Here, the ALJ's conclusion that Plaintiff is not illiterate rested on substantial and duly considered evidence. First, she noted the post-hearing exhibit offered by Plaintiff: a January 2024 email from an employee at the Martin Community College, opining that Plaintiff was at a "below 1st grade" literacy level. Tr. at 35, 510. The ALJ then explained why, despite this evidence, Plaintiff's record was nonetheless inconsistent with the Regulations' definition of illiteracy. As she pointed out, the email and enclosed testing results were deficient in many respects. She found no information existed as to the Martin County employee's credentials, the type of test performed, or who performed the test. *Id.* at 34–35. Thus, the results of the test were not interpreted by an

"acceptable source under Agency regulations." *Id.* at 35.

The ALJ further explained that, regardless of the validity of the test, the results were inconsistent with Plaintiff's language skills record. Plaintiff had tested at the third grade and fifth grade reading level in the past. *Id.* at 35. In eighth grade, Plaintiff tested at nine percent of his peers in reading skills and twenty-two percent of his peers in mathematics. *Id.* The ALJ found that, given these contradictory results, there was no basis to rely on the January 2024 test. *Id.* The ALJ also considered the timeline of Plaintiff's illiteracy claim, for which the first results supporting a below-first grade reading level were submitted in January 2024, in context with the "overall record" of "much higher reading skills." *Id.* at 34–35.

The ALJ then concluded that Plaintiff was not illiterate under the Regulations, and offered a variety of reasons for that conclusion. Because an illiterate individual "cannot read or write a simple message," the fact that Plaintiff filled out responses for two separate Function Reports weighed against illiteracy. *Id.* at 35. Plaintiff maintains that there is no proof he completed the Function Reports, but he identified himself as the "person completing this form" on both. *Id.* at 392, 408. The ALJ reiterated that the longitudinal record reflected reading skills well above the level alleged. This was an accurate characterization of the record, given Plaintiff's multiple past tests placing him at a third grade reading level or above. The ALJ also noted that Plaintiff's range of daily activities, including driving, using food stamps, and maintaining an email account involve some degree of literacy, as did his former employment as a home health aide. *Id.* at 35. The ALJ thus reasoned appropriately that the language skills exhibited across the record do not support a finding of illiteracy.

The record reflects that the ALJ fully and fairly considered the evidence for and against illiteracy while assessing Plaintiff's RFC. The court finds that the ALJ did not err in finding that

Plaintiff was not illiterate.

**B. Plaintiff's Step Five Arguments**

The court next considers Plaintiff's remaining objections: that the Commissioner failed to carry its Step Five burden given Plaintiff's limited language abilities, and that the magistrate judge "improperly shifted" the Step Five burden onto him.

At Step Five of the disability evaluation process, the Commissioner must show that work is available that the claimant can perform. *Hunter*, 993 F.2d at 35. "The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (Grids) or by calling a vocational expert to testify." *Aistrop v. Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566). If a claimant (1) suffers from a non-exertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment that restricts his performance of the full range of activities within a work category, an ALJ must produce specific vocational evidence of employment available to the claimant rather than merely rely on the Grids. *See Walker v. Bowen,* 889 F.2d 47, 49 (4th Cir. 1989); *Hammond v. Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h).

Here, the vocational expert identified three positions suitable for Plaintiff's RFC: final assembler, ampoule sealer, and touch-up screener. Tr. at 36. Respectively, these have reasoning levels of one, two, and two, and language development levels of one, one, and two. Plaintiff maintains that he cannot perform these jobs, because his RFC does not reflect his true literacy level. However, Plaintiff can only be correct if the ALJ did indeed miscalculate his literacy level at the RFC stage. This court has already determined that she did not. *See supra* Part II.A.

Indeed, the ALJ relied on much of the same, relevant evidence as she did during the RFC stage to conclude that Plaintiff is "capable of making a successful adjustment to other work that

exists in significant numbers in the national economy." *Id.* at 38. For this finding, she cited Plaintiff's prior employment as a home health aide, his record of driving and engaging in other daily activities that involve some level of reasoning (such as video games), and results from prior examinations showing that Plaintiff has an "only below average" intellect. *Id.* at 37. The court finds that the ALJ did not err by concluding that Plaintiff is capable of performing the jobs cited, having considered his age, education, work experience, and residual functional capacity. *Id.* at 38. In other words, the ALJ built the required "logical bridge" between the record and her conclusion that Plaintiff can perform the work recommended.

The court also finds that the magistrate judge did not "improperly shift the Step 5 burden" from the Commissioner onto the Plaintiff by "questioning his Martin [] Community College testing results" and other evidence of his limited language development ability. DE 22 at 3. The court can identify no such alleged burden-shifting at the portion cited by Plaintiff. Rather, as a reviewing court, the magistrate judge was ensuring that the ALJ considered the full record, which contradicted the level of language skills alleged. The court accordingly finds that the Commissioner met its Step Five burden and rejects Plaintiff's arguments to this end.

## III. Conclusion

A district court cannot "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment" for the ALJ's. *Arakas*, 983 F.3d at 95. Rather, the court is constrained to "sustain the ALJ's decision, even if [the court] disagree[s] with it, provided the determination is supported by substantial evidence." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court.") (citations omitted).

Having reviewed Plaintiff's objections and the record de novo, the court: (1) ADOPTS the

M&R [DE 21]; (2) AFFIRMS the decision of the Commissioner of the Social Security Administration; (3) DENIES Plaintiff's request for relief [DE 12]; and (4) GRANTS Defendant's request for relief [DE 19]. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant, forward a copy of this order to Plaintiff and all counsel of record, and close this case.

SO ORDERED this 15th day of September, 2026.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE